**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| FEDEQ DV004, LLC et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Docket no. 2:21-cv-00327-GZS |
| | ) |
| CITY OF PORTLAND, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**ORDER ON MOTION TO DISMISS**

Before the Court is Defendant City of Portland's Motion to Dismiss (ECF No. 5).  Having reviewed the Motion and the associated filings (ECF Nos. 6 & 7), the Court GRANTS IN PART and DENIES IN PART the Motion.

**I.      LEGAL STANDARD**

The pending Motion invokes two separate bases for dismissal under Federal Rule of Civil Procedure 12(b):  lack of subject matter jurisdiction and failure to state a claim.  See Fed. R. Civ. P. 12(b)(1) & (6).

Generally, a federal court is obligated to assure itself of subject matter jurisdiction before considering the merits of any complaint.  See, e.g., United States v. University of Mass., Worcester, 812 F.3d 35, 44 (1st Cir. 2016).  The party asserting subject matter jurisdiction bears the burden of demonstrating its existence.  E.g., Woo v. Spackman, 988 F.3d 47, 53 (1st Cir. 2021).  Faced with a motion to dismiss under Rule 12(b)(1), the Court applies the same "plausibility standard applicable under Rule 12(b)(6)" to the operative complaint.  Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016).  However, the Court may also consider additional materials submitted by either side that allow it to resolve the jurisdictional challenge.  See Valentin v.

Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001) (noting that a "plaintiff's well-pleaded factual allegations . . . [may be] augmented by an explanatory affidavit or other repository of uncontested facts").

Once the Court determines it has jurisdiction over the asserted claims, it may consider whether the operative complaint contains sufficient factual matter to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "In evaluating whether a complaint states a plausible claim, [the Court] 'perform[s] a two-step analysis.'"  Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016) (quoting Cardigan Mountain Sch. v. New Hampshire Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015)). First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  Morales-Cruz v. University of P.R., 676 F.3d 220, 224 (1st Cir. 2012) (citing Iqbal, 556 U.S. at 678).

Second, the Court "must determine whether the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id., 676 F.3d at 224 (quoting Iqbal, 556 U.S. at 678).  "This standard is 'not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" Saldivar, 818 F.3d at 18 (quoting Iqbal, 556 U.S. at 678); see also Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Auth., 4 F.4th 63, 70 (1st Cir. 2021) (same).  "Although evaluating the plausibility of a legal claim requires the reviewing court to draw on its judicial experience and common sense, the court may not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable."  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (internal citations and quotation marks omitted).  Rather, "[t]he

relevant inquiry focuses on the reasonableness of the inference of liability" drawn from the facts. Id. at 13.

In assessing whether a complaint adequately states a claim, the Court considers the "facts and documents that are part of or incorporated into the complaint." United Auto., Aerospace, Agric. Implement Workers of Am. Int'l Union v. Fortuño, 633 F.3d 37, 39 (1st Cir. 2011) (internal quotation marks omitted). But, the Court may also "supplement those facts with facts 'gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice.'" González v. Vélez, 864 F.3d 45, 48 (1st Cir. 2017) (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)).

In addition to evaluating the sufficiency of a complaint, a court may consider affirmative defenses like res judicata in ruling on a motion to dismiss for failure to state a claim. See In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003); Blackstone Realty LLC v. Federal Deposit Ins. Corp., 244 F.3d 193, 197 (1st Cir. 2001). So long as the facts establishing the defense are "clear 'on the face of the plaintiff's pleadings'" and "leave no doubt" that the defense applies, dismissal for failure to state a claim is appropriate. Blackstone Realty, 244 F.3d at 197 (quoting Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 592 (1st Cir. 1989) & LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998) respectively).

## II.    BACKGROUND

A parcel of land approximately one acre in size, recorded under the name "Lot 6," sits at the intersection of Somerset and Chestnut Streets in Portland, Maine. (Pl. Ex. 1 (ECF No. 1-1), PageID # 7.) Plaintiff FEDEQ DV004, LLC ("DV004") purchased Lot 6 from Defendant City of Portland in 2016 to construct a parking garage. (Pl. Ex. 2 (ECF No. 1-2).) The parking garage formed one part of an "integrated real estate development" DV004 planned to build with Plaintiff

FEDEQ DV005, LLC ("DV005").  (Compl. (ECF No. 1), PageID # 2.)  The development plan envisioned construction on Lot 6 alongside nearby Lots 1, 3, and 7, which DV005 owns.  (Id.)

The Portland City Council voted on September 8, 2021 to seize Lot 6 via a condemnation order.  (See Compl., PageID # 3; Pl. Ex. 3 (ECF No. 1-3) (hereinafter, "Condemnation Order").)  The Condemnation Order terminated DV004's ownership interest and the mortgage and leasehold interests that Plaintiffs FEDEQ Sponsor Entity V, LLC ("Lender") and Redwood Development Consulting, LLC ("Redwood") respectively held in Lot 6.  (Pl. Ex. 3, PageID #s 47 & 48.)  As compensation for the seizure of these interests, the Condemnation Order awarded each of these three Plaintiffs ten dollars.  (See id., PageID #s 46 & 47.)  The Condemnation Order did not award any funds to, nor mention, DV005.  The Condemnation Order noted an "effective date" of September 18, 2021, but was recorded in the Cumberland County Registry of Deeds on September 23, 2021.  (See id., PageID # 55; Compl., PageID # 4.)

The four Plaintiffs filed the Complaint under consideration on November 18, 2021, asserting violations of the Maine Constitution's Takings Clause (Count I) and its federal counterpart in the U.S. Constitution's Fifth Amendment (Count II).  See Me. Const. art 1, § 21;[1] U.S. Const., amend. V.  Specifically, Plaintiffs allege Defendant denied them "just compensation" as was due under the state and federal Takings Clauses.

## III.   DISCUSSION

In support of its Motion, Defendant raises two jurisdictional arguments:  that Plaintiffs' claims are untimely, and that the Court should abstain from hearing these claims under the Rooker-Feldman doctrine.  Defendant also raises two substantive arguments:  that res judicata bars both

---

[1] The Court construes Plaintiff's state constitutional claim as arising under the Takings Clause located in Article 1, § 21, but acknowledges that the Complaint repeatedly cites Article 1, § 19, which is the "open courts provision" of the Maine Constitution.  Martin v. Department of Corrections, 190 A.3d 237, 242 & n.8 (Me. 2018) (describing the reach and history of Me. Const. art. 1, § 19); see Compl., PageID #s 1 & 4.

claims, and that Plaintiffs have failed to state a claim upon which relief can be granted.  As it is obliged to do, the Court addresses the jurisdictional challenges before the substantive.  See Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 71–72 (2013); United States v. Millenium Labs., Inc., 923 F.3d 240, 248 (1st Cir. 2019).  Furthermore, because the Court's assertion of subject matter jurisdiction over Plaintiffs' state takings claims would be supplemental to its federal question jurisdiction over the federal takings claims, the Court evaluates the latter claims first.  See Lambert v. Fiorentini, 949 F.3d 22, 29 (1st Cir. 2020) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit will trigger the dismissal without prejudice of any supplemental state-law claims.") (internal quotation marks and alteration omitted); see also 28 U.S.C. § 1367.

### A.    Timeliness

#### 1.    Federal Takings Claim

The Takings Clause of the Fifth Amendment to the U.S. Constitution provides, "[N]or shall private property be taken for public use, without just compensation."  U.S. Const., amend. 5.  The Takings Clause applies to actions by states and their subdivisions by virtue of the Fourteenth Amendment.  See Cedar Point Nursery v. Hassid, 141 S. Ct. 2063, 2071 (2021).  "The Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner."  Knick v. Township of Scott, 139 S. Ct. 2162, 2170 (2019); see also 42 U.S.C. § 1983 (creating liability for federal-law rights violations against persons acting under color of state authority); Monell v. Department of Soc. Servs., 436 U.S. 658, 663 (1978) (extending section 1983 liability to local government units).  In this case, Plaintiffs' claim under the Fifth Amendment accrued when Defendant effectuated a taking of Lot 6.  The statute of limitations applicable to section 1983 actions in Maine is six years.  Small v.

Inhabitants of Belfast, 796 F.2d 544, 546 (1st Cir. 1986); see Fincher v. Town of Brookline, 26 F.4th 479, 485 (1st Cir. 2022) ("Section 1983 'borrows the appropriate state law governing limitations unless contrary to federal law.'" (quoting Poy v. Boutselis, 352 F.3d 479, 483 (1st Cir. 2003))).  Because Plaintiffs filed the Complaint within six years of the taking, the federal takings claim under section 1983 is timely.

Defendant resists this conclusion, insisting that the exclusive avenue available to Plaintiffs to challenge its exercise of eminent domain—under state and federal law alike—was review in state court pursuant to 23 M.R.S.A. § 3029.  (See Def. Mot. (ECF No. 5), PageID #s 69–71 & 73–74; Def. Reply (ECF No. 7), PageID #s 251–55.)  Because Plaintiffs did not file a complaint in state court within the allotted time, Defendant avers, the present Complaint is untimely.  Defendant bases this argument on the Supreme Court's 2019 decision in Knick v. Township of Scott, 139 S. Ct. 2162 (2019).  Defendant reasons that Knick permits inverse condemnation claims against state governments without exhaustion of state remedial procedures, but does not open the door to federal court for direct eminent domain proceedings in which a government institutes a lawsuit to condemn property.

As evidence of this proposition, Defendant cites two federal district court opinions decided in the wake of Knick that denied property owners the ability to remove direct eminent domain proceedings from state court.  See City of Jamaica Beach v. Williams, No. 3:20-cv-00241, 2020 WL 6120469 (S.D. Tex. Sept. 29, 2020); Providence City v. Thompson, No. 1:19-cv-00088, 2019 WL 4932759 (D. Utah Oct. 7, 2019).  Because the exercise of eminent domain at issue here arose from a direct proceeding of the type at issue in Jamaica Beach and Providence City, Defendant

asserts, it may only be reviewed in state court under the appeal[2] procedures provided for by state statute.  See 23 M.R.S.A. § 3029.

Defendant's reliance on Knick is unavailing because the current action was instituted by the property owner and related interest holders, not by the government.  For the same reason, the cases Defendant cites are inapposite.  In states where the government exercises eminent domain via a complaint effectuating a taking under state law, a property owner may be forced to litigate his federal takings claim as a counterclaim in that same lawsuit or face preclusion when attempting to assert the federal claim in a later suit.  See 28 U.S.C. § 1441(a) (requiring original federal court jurisdiction as a basis for removal); San Remo Hotel, L.P. v. City and County of San Francisco, 545 U.S. 323, 338 (2005) (requiring federal courts to give preclusive effects to state-court judgments concerning takings claims).

In contrast, where state law makes the property owner the plaintiff in any legal proceedings concerning eminent domain, there is no reason to require the property owner to litigate in state court.  Indeed, Knick stands for this very proposition.  See Knick, 139 S. Ct. at 2170 ("The Fifth Amendment right to full compensation arises at the time of the taking, *regardless of post-taking remedies that may be available to the property owner*." (emphasis added)).  Moreover, Maine law establishes such a procedure.  As took place here, a municipality in Maine may seize property by eminent domain by issuing a condemnation order without any involvement by a court.  See 30-A M.R.S.A. § 5403(6) (granting municipalities the power of eminent domain in connection with the construction of "revenue-producing municipal facilities," including parking garages); id. § 3101 (referring to 23 M.R.S.A. § 3021 et seq. as setting forth the procedure for eminent domain); 23

---

[2] The relevant statute refers to a property owner's initiation of a lawsuit to challenge the determination of damages in an exercise of eminent domain as an "appeal to . . . Superior Court." 23 M.R.S.A. § 3029.  As is elaborated more fully below, the Court construes this provision as a cause of action for original jurisdiction in a state or federal trial court.

M.R.S.A. § 3023 (describing the procedure by which a municipality may exercise eminent domain). After a municipality exercises eminent domain, a property owner has recourse to 23 M.R.S.A. § 3029. Section 3029 provides, in relevant part,

> Any person aggrieved by the determination of the damages awarded to owners of property or interests therein under this chapter may, within 60 days after the day of taking, appeal to the Superior Court in the county where the property lies. The court shall determine damages by a verdict of its jury or, if all parties agree, by the court without a jury or by a referee or referees and shall render judgment for just compensation, with interest where such is due, and for costs in favor of the party entitled thereto.

> Any person aggrieved by the action or nonaction of municipal officers or the municipal legislative body in proceedings under this chapter, other than a determination of damages, may appeal to the Superior Court in the county where the property lies, pursuant to Rule 80B of the Rules of Civil Procedure.

23 M.R.S.A. § 3029.

The Law Court has construed section 3029 as establishing a "de novo determination of damages" assessed pursuant to other sections of the same statutory chapter—chapter 304—which concerns acquisition of property for highway purposes. Paul v. Town of Liberty, 151 A.3d 924, 932 (Me. 2016) (quoting Frustaci v. City of South Portland, 879 A.2d 1001, 1005 (Me. 2005)); see 23 M.R.S.A. ch. 304. In other words, section 3029 establishes a cause of action. As in the ordinary course, a federal court seized of diversity or supplemental jurisdiction may entertain a suit that includes such a cause of action. Cf. 28 U.S.C. §§ 1332 & 1367. In sum, because the property owner is the plaintiff in Maine, litigation of her federal takings claim is not limited to a state court like it might be in a suit brought by the government in state court.[3] Accordingly, because Plaintiffs

---

[3] Defendant correctly observes that a claim for damages stemming from eminent domain under section 3029 is not an inverse condemnation claim, as was at issue in Knick. See Larrabee v. Town of Knox, 744 A.2d 544, 545 n.3 (Me. 2000) (defining inverse condemnation as a "cause of action against a government agency to recover the value of property taken by the agency, though no formal exercise of the power of eminent domain has been completed." (quoting Black's Law Dictionary)). But neither is such a claim a direct proceeding instituted by the government, which is a critical distinction.

brought their federal takings claim within the applicable statute of limitations, it is timely and properly before the Court.

### 2.     State Takings Claim

Having addressed the federal claim, the Court turns to Defendant's argument that Plaintiffs' state takings claim is untimely under section 3029 and Maine Rule of Civil Procedure 80B.  Section 3029 provides two avenues to appeal a municipality's exercise of eminent domain. Where the plaintiff is "aggrieved by the determination of damages awarded to owners of property or interests," she may file a complaint "within 60 days after the day of taking."  23 M.R.S.A. § 3029.  If instead the plaintiff is "aggrieved by the action or nonaction of municipal officers or the municipal legislative body in proceedings . . . other than a determination of damages," id., the applicable limitations period appears in Rule 80B, which in turn provides for "30 days after notice of any action . . . of which review is sought."  Me. R. Civ. P. 80B(b).  These deadlines are jurisdictional.  Paul, 151 A.3d at 931.

Here, the applicable limitations period is "within 60 days after the day of taking" because Plaintiffs are challenging the determination of damages awarded.  23 M.R.S.A. § 3029.  A chapter 304 taking occurs on the day title passes, which in turn is "upon proper recordation (if that is earlier than service of the [condemnation] order and check) whether or not the property owner has actual notice of the taking."  Luce v. City of Portland, 556 A.2d 656, 657–58 (Me. 1989) (Hornby, J.). The Complaint does not allege that Plaintiffs were served a copy of the Condemnation Order prior to its recordation in the Registry of Deeds on September 23, 2021.  Thus, the taking is deemed to have occurred on that date for purposes of the present Motion.  Plaintiffs' state claim is timely because it was filed on November 18, 2021, in advance of the 60-day deadline.  Because the sole

challenges to Defendant's exercise of eminent domain in this case concern the assessment of damages, the 30-day limitations period in Rule 80B is inapplicable.

Both the federal and state takings claims are timely, and thus dismissal for lack of subject matter jurisdiction on timeliness grounds is inappropriate.

### B. Rooker-Feldman Doctrine

"Under the Rooker-Feldman doctrine, federal district courts lack jurisdiction over federal complaints that essentially invite federal courts of first instance to review and reverse unfavorable state-court judgments." Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R., 410 F.3d 17, 20 (1st Cir. 2005) (internal quotation marks and alterations omitted). Rooker-Feldman's sweep is broader than preclusion doctrine: its application "does not depend on what issues were actually litigated in the state court . . . [r]ather, Rooker-Feldman bars jurisdiction whenever parties who lost in state court seek review and rejection of that judgment in federal court." Miller v. Nichols, 586 F.3d 53, 59 (1st Cir. 2009) (internal quotation marks, alterations, and citation omitted). Put simply, Rooker-Feldman disallows "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

Defendant invokes Rooker-Feldman to bar the instant case, asserting that doctrine prevents the Court from second-guessing Defendant's issuance of a Condemnation Order. Defendant's argument fails for a simple reason: there has been no state-court proceeding concerning Lot 6, and thus there exists no state-court judgment that might merit abstention under Rooker-Feldman. The Rooker-Feldman doctrine originates in an interpretation of the federal statutes granting appellate review to the Supreme Court but only original jurisdiction to the federal district courts. See Rooker

v. Fidelity Tr. Co., 263 U.S. 413, 415 – 16 (1923).  The basis of the doctrine remains unchanged today.  See Exxon Mobil, 544 U.S. at 284.  The Complaint alleges no facts that would permit the Court to conclude that Defendant's City Council is a state court.  Thus, there is no apparent basis on which Rooker-Feldman might apply.

### C.    Res Judicata

When a federal court evaluates the res judicata effect, if any, of a state-court judgment, the federal court must apply the state's law on res judicata.  See 28 U.S.C. § 1738; Cruz v. Melecio, 204 F.3d 14, 18 (1st Cir. 2000).  Under Maine law, "[r]es judicata bars the relitigation of issues that were, or might have been, litigated in a prior action between the same parties or their privies, when a valid final judgment was entered in the prior action."  Maine Educ. Ass'n v. Maine Cmty. Coll. Sys. Bd. of Trs., 923 A.2d 914, 917 (Me. 2007).  Maine's res judicata doctrine extends to decisions on the merits by "state and municipal administrative agencies."  Hebron Acad., Inc. v. Town of Hebron, 60 A.3d 774, 783 (Me. 2013).

Defendant's procedures leading to its issuance of the Condemnation Order lack an element essential for res judicata's application:  the adversarial participation of both parties (or the opportunity to participate adversarially) in the underlying proceeding.  See Maine Educ. Ass'n, 923 A.2d at 917.  The facts alleged in the Complaint suggest that the City Council deliberated without any participation or opportunity to participate from Plaintiffs, and therefore res judicata cannot apply to the current case.

The precedents cited by both parties confirm the necessity of adversarial proceedings for the application of res judicata.  See, e.g., Pollack v. Regional Sch. Unit 75, No. 2:13-cv-00109-NT, 2017 WL 1592264, at *10 (D. Me. Apr. 28, 2017) (according preclusive effect to the decision of a state hearing officer after a series of hearings at which both parties participated); Hebron

Acad., 60 A.3d at 783 (applying res judicata to the decision of a state agency after a hearing); Kradoska v. Kipp, 397 A.2d 562, 565–66 (Me. 1979) (res judicata applied to state-court judgment following adversarial participation by both parties).

What these precedents establish, the policies underlying the res judicata doctrine confirm: a rule grounded in "fairness to litigants" cannot be said to achieve its objective where one litigant has had no prior opportunity, in fact, to litigate. Maine Cent. R. Co. v. Town of Dexter, 588 A.2d 289, 292 (Me. 1991). The development of a fuller factual record may reveal that Plaintiffs indeed were given the opportunity to participate in Defendant's proceedings, and thus that res judicata is appropriate. At this stage, however, the facts alleged in the Complaint must "leave no doubt" that res judicata applies. LaChapelle, 142 F.3d at 509. Because they do not, the Court declines to dismiss the Complaint on the basis of res judicata.

### D.      Failure to State a Claim to Relief

Maine courts "have long interpreted" the state and federal Takings Clauses similarly. Anthem Health Plans v. Superintendent of Ins., 40 A.3d 380, 389 (Me. 2012). "[T]hus the Court will rely on the well developed body of federal law in analyzing the present Motion." Franklin Mem'l Hosp. v. Harvey, 532 F. Supp. 2d 204, 208 (D. Me. 2008) (citing Bell v. Wells, 557 A.2d 168, 177–78 (Me. 1989) & Seven Islands Land Co. v. Maine Land Use Regul. Comm'n, 450 A.2d 475, 482 (Me. 1982)).

"Takings claims involve a two-step inquiry." Asociación de Subscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 27 (1st Cir. 2007). "[P]laintiffs must first show that they possess a recognized property interest which may be protected by the Fifth Amendment." Id. "Property interests . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state

law[.]"  Board of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972).  After showing a recognized property interest, "the plaintiff must next show that the challenged action caused an illegal taking of that interest."  Flores Galarza, 484 F.3d at 27 (internal quotation marks and alterations omitted).  "The Supreme Court has recognized two types of takings:  physical takings and regulatory takings."  Id. at 27–28.

Defendant challenges Plaintiff DV005's state and federal takings claims for failure to state an adequate claim for relief.[4]  Vis-à-vis DV005, the Complaint states the following:

- "DV005 owns the remainder of private lots on the Subdivision Plat (lots 1, 3 and 7), which are immediately adjacent to and were also purchased from the City for valuable consideration concurrently with Lot 6 as part of an integrated real estate development involving multiple parties and subject to myriad agreements between and involving such parties."  (Compl., PageID # 2.)

- "DV004 and DV005 (together, 'Federated') purchased all of the private lots on the Subdivision Plat from the City as a unified development site of which Lot 6 was but one, integral component."  (Id., PageID # 3.)

- "Without Lot 6, the remainder of Federated's project site is worthless as presently designed."  (Id.)

- "DV005 has been directly damaged by the effects of its severance from the larger, comprehensively planned, Federated project site."  (Id.)

These allegations do not clearly state either a physical or a regulatory taking claim.  In its Response, DV005 characterizes its claim as one for "severance damages."  (See Pl. Resp. (ECF

---

[4] While Defendant makes its argument concerning the effect of the Supreme Court's decision in Knick in a section of its briefing alleging failure to state a claim, the Court considers that argument a jurisdictional challenge to Plaintiffs' federal takings claim and addresses it in Part III.A, supra.  See Def. Mot., PageID #s 78–81; Def. Reply, PageID #s 252–53.

No. 6), PageID #s 98–101.)  For its part, Defendant denies that DV005 states an adequate claim of either a physical or a regulatory taking.  (See Def. Mot., PageID # 81; Def. Reply, PageID #s 257–58.)

The Court concludes that dismissal of Plaintiff DV005's state and federal claims is appropriate for two reasons.  First, the allegations of DV005's harm are so speculative as to bring DV005's standing to bring a takings claim into question.  See Spokeo, Inc. v. Robins, 578 U.S. 330, 334 (2016) ("[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both concrete and particularized.") (internal quotation marks and emphasis omitted); Reddy v. Foster, 845 F.3d 493 (1st Cir. 2017) ("[I]f a future injury is too speculative for Article III purposes . . . there is no standing to sue.") (internal quotation marks omitted).

Second, even a generous reading of DV005's claims fail to state a cognizable takings claim. DV005 does not assert that its own property was physically taken, and so it cannot make out a physical takings claim.  See Flores Galarza, 484 F.3d at 28.  Instead, DV005 alleges that it is entitled to "severance damages" from Defendant's taking of Lot 6.  But severance damages may be available to the owner of property taken, not the owner of an adjoining parcel.  See, e.g., Baetjer v. United States, 143 F.2d 391, 394 (1st Cir. 1944) ("If only a portion of a single tract is taken, the owner's compensation for that taking includes any element of value arising out of the relation of the part taken to the entire tract. Such damage is often, though somewhat loosely, spoken of as severance damage." (internal quotation marks omitted)); August Realty, Inc. v. Inhabitants of York, 431 A.2d 1289, 1291 n.4 (Me. 1981) ("[S]everance damages [are] damages accruing to the remaining land after a part is taken.").  Because DV005 did not own any direct interest in Lot 6, it cannot claim severance damages.  See Nat'l R.R. Passenger Corp. v. Certain Temporary Easements Above R.R. Right of Way in Providence, 357 F.3d 36, 41 (1st Cir. 2004).  Furthermore,

14

Plaintiff DV005 cites to—and the Court is aware of—no case in which the alleged depreciation of an adjoining property owner's land gave rise to a cognizable takings claim.  For these reasons, the Court dismisses Plaintiff DV005's claims.[5]

**IV.    CONCLUSION**

For the reasons stated, the Court hereby DENIES Defendant's Motion to Dismiss (ECF No. 5) as to Plaintiffs FEDEQ DV004, LLC, FEDEQ Sponsor Entity V, LLC, and Redwood Development Consulting, LLC, but GRANTS the Motion as to Plaintiff FEDEQ DV005, LLC. FEDEQ DV005, LLC is hereby DISMISSED from the action.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 11th day of April, 2022.

---

[5] The Court notes that the Law Court has read section 3029 to provide a standalone, statutory basis for damages stemming from governmental action, even where the government action does not result in a constitutional taking from the plaintiff.  See Frustaci, 879 A.2d at 1004.  However, such a statutory claim was not discernible from the Complaint, even generously construed.